

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **DIANA YAZMIN LUGO,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:22-cv-00362-ACA** |
| | ] | |
| **BIRMINGHAM, JEFFERSON** | ] | |
| **COUNTY TRANSIT AUTHORITY,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Diana Yazmin Lugo, a Hispanic female of Colombian national origin, worked for Defendant Birmingham-Jefferson County Transit Authority ("BJCTA") as a customer service specialist in the Americans with Disabilities Department. Almost a year after she began relaying complaints from disabled riders, the BJCTA promoted a less qualified African American employee and allowed African American employees to work remotely while requiring Ms. Lugo to work in person. When she asked why she was being treated differently, her supervisor blamed her "accent or where [she was] from." Ms. Lugo attempted to complain of discrimination from February to June 2021, but the human resources department refused to meet with her. Her employment was ultimately terminated in June 2021.

Ms. Lugo filed this lawsuit, asserting claims of: (1) national origin discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(2) ("Title VII") ("Count One"); (2) race discrimination, in violation of 42 U.S.C. § 1981 ("Count Two"); (3) associational disability discrimination, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12112(a) and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Count Three"); (4) retaliation, in violation of Title II of the ADA and § 505 of the Rehabilitation Act ("Count Four"); and (5) retaliation, in violation of Title VII and § 1981. (Doc. 21). The BJCTA moves to dismiss the amended complaint for failure to state a claim. (Doc. 24).

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the BJCTA's motion. Ms. Lugo states claims of national origin discrimination under § 1981 (Count One), race discrimination under Title VII (Count Two), and retaliation under § 1981 and Title VII (Count Five), so the court **WILL DENY** the motion to dismiss Count One, Count Two, and Count Five. Because associational discrimination claims are not available under Title II of the ADA or § 504 of the Rehabilitation Act, the court **WILL GRANT** the BJCTA's motion to dismiss Count Three **WITH PREJUDICE**. And because Ms. Lugo has not alleged facts giving rise to a plausible inference that the BJCTA retaliated against her for her complaints

of discrimination against disabled riders, the court **WILL GRANT** the BJCTA's motion to dismiss Count Four **WITHOUT PREJUDICE**.

## I.    BACKGROUND

In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Ms. Lugo is a Hispanic female of Colombian national origin. (Doc. 21 at 3 ¶ 8). In March 2019, she began working for the BJCTA as a customer service specialist in the ADA Department. (*Id.*). Starting in September 2019, Ms. Lugo reported to human resources officials that disabled riders were complaining because they were not being picked up at their assigned stops. (*Id.* at 3 ¶ 9). When COVID-19 began, the BJCTA allowed African American employees to work remotely, but required Ms. Lugo to report to work in person. (*Id.* at 4 ¶ 13). And in August 2020, the BJCTA promoted an African American employee with lesser qualifications instead of Ms. Lugo. (Doc. 21 at 4 ¶ 12). When Ms. Lugo asked why she was treated differently, her supervisor said, "I don't know[,] it may be your accent or where you are from." (*Id.* at 4 ¶ 14). In addition, someone manipulated Ms. Lugo's work hours to make it appear that she had not worked "the requisite amount of time," lowering her pay. (*Id.* at 4 ¶ 15).

From February 2021 to June 2021, Ms. Lugo attempted to schedule appointments with the human resources office to discuss the discriminatory treatment. (Doc. 21 at 4 ¶ 16). The human resources officer would mispronounce her name and tell her come back later. (*Id.* at 4–5 ¶ 16). In April 2021, Ms. Lugo received "a false employee counseling and written warning for unsatisfactory performance" (*id.* at 5 ¶ 17), and in June 2021, her employment was terminated even though the BJCTA failed to follow its progressive discipline policy (*id.* at 5 ¶¶ 18–19).

## II.     DISCUSSION

Ms. Lugo asserts claims of national origin discrimination (under Title VII), race discrimination (under § 1981), associational disability discrimination (under Title II of the ADA and § 504 of the Rehabilitation Act), and retaliation (under § 1981, Title VII, Title II, and § 505 of the Rehabilitation Act). (Doc. 21). The BJCTA seeks dismissal of all these claims for failure to state a claim. (Doc. 24).

"To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For clarity, the court will begin with Counts One, Two, and Five

(the counts arising under Title VII and § 1981), and end with Counts Three and Four (the counts arising under Title II of the ADA and §§ 504 and 505 of the Rehabilitation Act).

> ### 1. Counts One and Two: Title VII National Origin Discrimination and § 1981 Race Discrimination

In Count One, Ms. Lugo asserts that the BJCTA discriminated against her based on her Colombian national origin, in violation of Title VII, when it promoted a lesser-qualified African American employee instead of her, gave her job duties and responsibilities African American employees did not have, and terminated her employment based on a false disciplinary warning. (Doc. 21 at 4–6 ¶¶ 12–23). In Count Two, Ms. Lugo asserts that the BJCTA discriminated against her based on her race, in violation of § 1981, based on the same actions. (*Id.* at 4–5 ¶¶ 12–19, 7–8 ¶¶ 31–32).

Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits intentional discrimination "in private employment on the basis of race." *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459–60 (1975). As a general rule, claims brought under Title VII and § 1981 "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

The BJCTA contends that Ms. Lugo has failed to provide any non-conclusory facts suggesting that the failure to promote her and the termination of her employment were related to her national origin or race because she failed to provide details about a similarly situated comparator, and her allegation about her supervisor blaming the differential treatment on her "accent or where you are from" lacks details such as the name of the speaker, the speaker's position, and "how or when said communications occurred." (Doc. 24 at 3–11 & n.1). The court is not persuaded.

A complaint alleging discrimination under Title VII (or § 1981) need "only provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quotation marks omitted). It does not need to "allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case." *Id.* Ms. Lugo alleges that when she asked her supervisor why she was being treated differently from her African American coworkers, her supervisor said "I don't know[,] it may be your accent or where you are from." (Doc. 21 at 4 ¶ 14). Moreover, the similarly situated comparator requirement on which the BJCTA relies is part of the *McDonnell Douglas* framework, which is not applicable at the dismissal stage. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 & n.6 (11th Cir. 2019) (*en banc*) (explaining that the comparator analysis is a part of the *McDonnell Douglas* framework for analyzing a claim of employment discrimination using circumstantial evidence).

Ms. Lugo's allegations are sufficient, at the dismissal stage, to create an inference of intentional discrimination based on either Ms. Lugo's race or her national origin.

In a footnote, the BJCTA perfunctorily raises a causation argument. (Doc. 24 at 10 n.2). Appendix II to this court's initial order, expressly applicable to all dispositive motions, states that the court "will not consider substantive arguments made in footnotes." (Doc. 22 at 15; *see id.* at 9). In any event, the BJCTA's argument ignores Federal Rule of Civil Procedure 8, which permits a party to plead claims "alternatively or hypothetically" and to "state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)–(3). Accordingly, the court will not address the merits of the BJCTA's causation argument.

The court therefore **DENIES** the motion to dismiss Counts One and Two.

2.  Count Five: Title VII and § 1981 Retaliation

In Count Five, Ms. Lugo asserts that the BJCTA retaliated against her, in violation of Title VII and § 1981, because she opposed race and national origin discrimination. (Doc. 21 at 13–14 ¶¶ 64–67).

Title VII prohibits employers from discriminating against employees for "opposing" employment practices made unlawful by the statute. 42 U.S.C. §§ 2000e-3(a). "Retaliation claims are also cognizable under 42 U.S.C. § 1981 and are analyzed under the same framework as Title VII claims." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020).

The BJCTA argues Ms. Lugo's Title VII and § 1981 retaliation claims fail because she failed to provide specific dates about when she reported discrimination to human resources officials, how she reported it, to whom she reported it, specific information about being improperly disciplined, or information that the supervisors who disciplined her were aware of her reports to discrimination. (Doc. 24 at 12–13). However, Ms. Lugo alleges that from February 2021 through June 2021, she "tried to schedule several appointments with the BJCTA's human resources officials regarding ongoing discriminatory treatment," but the officials kept telling her to come back later. (Doc. 21 at 4 ¶ 16). During this time period, she was falsely counseled and warned for unsatisfactory performance, and the BJCTA ultimately terminated her without following its own progressive discipline policy. (*Id.* at 5 ¶¶ 17–19). This is sufficient to plausibly allege retaliation based on Ms. Lugo's opposition to unlawful employment practices. Accordingly, the court **DENIES** the motion to dismiss Count Five.

### 3. Count Three: ADA and Rehabilitation Act Associational Disability Discrimination

In Count Three, Ms. Lugo asserts that the BJCTA engaged in associational disability discrimination, in violation of Title II of the ADA and § 504 of the Rehabilitation Act, by discriminating against her for advocating on behalf of disabled riders. (Doc. 21 at 10 ¶ 45). The BJCTA argues that Ms. Lugo's claims of disability discrimination under the Title II and § 504 fail as a matter of law because

she does not allege that she has a disability, and neither Title II nor § 504 support a claim of associational disability. (Doc. 24 at 14–16; doc. 31 at 7–10). The BJCTA is correct.

Title II prohibits public entities from discriminating against any "qualified individual *with a disability* . . . by reason of such disability."[1] 42 U.S.C. § 12132 (emphasis added); *see id.* § 12131(2) (defining "qualified individual with a disability"). Similarly, § 504 prohibits any program or activity receiving federal financial assistance from discriminating against any "qualified individual *with a disability* . . . solely by reason of her or his disability." 29 U.S.C. § 794(a) (emphasis added); *id.* § 705(20) (defining "individual with a disability"). As a result, a plaintiff alleging employment discrimination under Title II of the ADA or § 504 of the Rehabilitation Act must establish, among other things, that she has a disability. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).

Ms. Lugo does not allege that she has a disability. (*See generally* doc. 21). Instead, she argues that her claim is for "associational disability discrimination":

---

[1] This is in contrast with Titles I and III of the ADA, which explicitly permit claims of associational discrimination. *See* 42 U.S.C. §§ 12112(b)(4) (defining the phrase "discriminate against a qualified individual on the basis of disability" in Title I to mean "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association"); *id.* § 12182(b)(1)(E) (defining discrimination in Title III as "exclud[ing] or otherwise deny[ing] equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association").

discrimination because of her association with disabled persons, rather than her own disability. (Doc. 30 at 13–15). But the authority on which she relies relates to a non-disabled plaintiff's *standing* to bring a claim of discrimination based on injuries suffered, not by the plaintiff herself, but by a disabled person. *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1142–43 (11th Cir. 2014). There is no question here that Ms. Lugo has standing because she is alleging injuries to herself; the question is whether a claim of associational discrimination is cognizable under the statutes on which she relies. The answer to that question is no.

Ms. Lugo cannot assert a claim of associational discrimination under Title II or § 504 of the Rehabilitation Act. Accordingly, the court **WILL GRANT** the motion to dismiss Count Three.

### 4.  Count Four: ADA and Rehabilitation Act Retaliation

In Count Four, Ms. Lugo asserts that the BJCTA retaliated against her, in violation of the ADA and the Rehabilitation Act, by terminating her for advocating for the rights of disabled riders. (Doc. 21 at 12 ¶ 55). Notably, Ms. Lugo's amended complaint specifies that she brings her retaliation claim under Title VI of the Civil Rights Act of 1964, as incorporated by Section 505 of the Rehabilitation Act. (*Id.* at 11–12 ¶ 53); *see* 29 U.S.C. § 794a(a)(2).

The ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C.

§ 12203(a). Title VI of the Civil Rights Act, incorporated by § 505 of the Rehabilitation Act, prohibits discrimination under federally assisted programs "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. No part of Title VI explicitly creates a cause of action for retaliation, *see id.* §§ 2000d through 2000d-7, but the Supreme Court has held that Title IX—which the Eleventh Circuit construes *in pari materia* with Title VI—contains a cause of action for retaliation, based on the same language.[2] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178–81 (2005); *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003).

The BJCTA argues Ms. Lugo's claims of retaliation under the ADA and the Rehabilitation Act fail as a matter of law because she does not allege exactly when she lodged complaints, how she made the complaints, or to whom she made the complaints, and she cannot show temporal proximity because almost two years passed between September 2019 (when she first reported complaints by disabled riders) and June 2021 (when the BJCTA terminated her employment). (Doc. 24 at 17). The court does not agree that Ms. Lugo needs to plead with particularity the identity, dates, positions, or specific manner in which she relayed the disabled riders' complaints of discrimination, but does agree that Ms. Lugo's allegations, taken as a

---

[2] In any event, § 504 of the Rehabilitation Act expressly incorporates the section of the ADA that prohibits retaliation. *See* 29 U.S.C. § 794(d) (incorporating 42 U.S.C. § 12203(a)). Accordingly, even if Title VI cannot be construed to contain a cause of action for retaliation, the Rehabilitation Act itself does contain such a cause of action.

whole, do not plausibly allege that her termination or differential treatment were in retaliation for those complaints.

Ms. Lugo's complaint broadly alleges that, beginning in September 2019, she began relaying disabled riders' complaints about bus service to human resources employees. (Doc. 24 at 3 ¶ 9). Although her use of the word "starting" implies that she continued to relay these complaints, she gives no information about how long she did so or whether anyone in a decisionmaking role ever learned about the complaints. (*See generally id.* at 3–5 ¶¶ 9–19). Instead, she asserts in a conclusory manner that the BJCTA began to retaliate against her by "denying her promotional opportunities, assigning her more work, subjecting her to unwarranted discipline and berating her performance." (*Id.* at 3–4 ¶ 11). But the specific instances of denying her promotional opportunities, treating her differently, and subjecting her to unwarranted discipline all occurred after March 2020—at least six months after she brought the disabled riders' complaints to light to human resources employees (not to her supervisors or other employees in charge of operations). (*See id.* at 3–4 ¶¶ 9–18).

Although Ms. Lugo need not provide detailed factual allegations at the dismissal stage, these allegations do not rise to the level of plausibly supporting an inference that retaliation underlay the BJCTA's actions. *See Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, the court **WILL GRANT** the BJCTA's motion to dismiss Count Four **WITHOUT PREJUDICE**.

## III.    CONCLUSION

The court **WILL GRANT IN PART** and **WILL DENY IN PART** the BJCTA's motion. The court **WILL GRANT** the motion to dismiss Count Three **WITH PREJUDICE**. The court **WILL GRANT** the motion to dismiss Count Four **WITHOUT PREJUDICE**. The court **WILL DENY** the motion to dismiss Count One, Count Two,  and Count Five.

**DONE** and **ORDERED** this October 31, 2022.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE